UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
GRICELDA ANDRADE,                                               Index No.

                    Plaintiff,

                                                  **COMPLAINT**

   -against-

KARP SCARSDALE, LLC d/b/a
THE AMBASSADOR SCARSDALE

                                                  *Jury Trial Demanded*

                    Defendant.
-------------------------------------------------------------

      Plaintiff, Gricelda Andrade ("Plaintiff"), by her attorney, THE LAW OFFICE OF JON A. STOCKMAN, as and for her Complaint, respectfully alleges the following:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendant KARP SCARSDALE, LLC d/b/a The Ambassador Scarsdale ("Defendant") pursuant to the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL").

## JURISDICTION AND VENUE

2. This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the events giving rise to the claim occurred within this judicial district.

3. This Court possesses jurisdiction over this action because it involves federal claims (ADA claims).

4. Pursuant to 28 U.S.C. § 1367(a), this Court possesses supplemental jurisdiction over the state claims in this action because they are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

1

5. Plaintiff filed a charge (Charge No. 520-2021-00386) with the Equal Employment Opportunity Commission ("EEOC") on October 28, 2020. **See Exhibit A**.

6. On July 9, 2021, the EEOC issued a Notice of Right to Sue with respect to Plaintiff's aforementioned EEOC Charge (Charge No. 520-2021-00386). **See Exhibit B**.

7. Plaintiff has filed her Complaint in this action within ninety (90) days of when the EEOC issued the aforementioned Right to Sue.

## THE PARTIES

8. Plaintiff is a resident of the State of New York, County of Westchester.

9. At all times relevant to the Complaint, Plaintiff was an "employee" of the Defendant within the meaning of the ADA and the NYSHRL.

### *DEFENDANT*

10. Upon information and belief, at all times relevant to the Complaint, Defendant is and was a domestic limited liability company incorporated in the State of New York with its principal offices located at 9 Saxon Wood, White Plains, NY 10605.

11. At all times relevant to the Complaint, Defendant was Plaintiff's "employer" within the meaning of the ADA, the NYSHRL, and the NYLL.

12. At all times relevant to the Complaint, Defendant employed more than twenty (20) employees.

13. At all times relevant to the Complaint, Defendant is and was engaged in interstate commerce.

**THE FACTS**

14. Plaintiff was employed by Defendant as a Dining Room Supervisor at Defendant's Assisted Living Residence (located at 9 Saxon Wood, White Plains, NY 10605) from in or around January, 2020 through May, 2020, when Defendant terminated her employment.

15. By letter dated May 12, 2020, Defendant notified Plaintiff it was terminating her employment because of her "excessive number of absences during [her] probationary period."

16. In the letter, Defendant noted "[o]ut of 73 scheduled days, [Plaintiff was] absent for 14 days (19% absent)." Defendant's termination letter is an admission of disability discrimination given that all but one of Plaintiff's absences during her tenure with Defendant were due to Plaintiff's taking time off because (a) she exhibited symptoms associated with COVID-19, (b) her husband tested positive for COVID-19, or (c) her disabled son required her assistance. The only time Plaintiff missed work due to a non-medical reason was when she attended a wedding. This was an authorized absence.

**PLAINTIFF EXHIBITS COVID-19 SYMPTOMS**

17. Based on Defendant's own admission, Plaintiff's absences during the period March 31, 2020 through April 4, 2020 played a role in her termination. Plaintiff was absent from work during this period due to her exhibiting symptoms associated with COVID-19 and due to her awaiting COVID-19 test results. Plaintiff's symptoms included a severe headache, chills, difficulty swallowing, a sore throat, and cough.

18. Prior to taking off from work on March 31, 2020, Plaintiff notified Defendant she was experiencing symptoms associated with COVID, she had taken a COVID test, and was directed by her doctor to quarantine until she received her test result.

19.     Prior to taking off from work on March 31, 2020, Plaintiff obtained permission from Defendant to do so. Plaintiff's absences during the period March 31, 2020 through April 4, 2020 were authorized by Defendant.

20.     After Plaintiff notified Defendant she was suffering symptoms associated with COVID-19, Defendant did not direct her to come to work despite her suffering such symptoms.

21.     Likewise, after Plaintiff notified Defendant she was suffering symptoms associated with COVID-19, Defendant did not warn her that taking time off from work due to her suffering such symptoms would place her employment in danger or have any negative impact on her employment status.

22.     On April 3, 2020, Plaintiff texted her supervisor Sha Ron Shaw a letter from Dr. Michael D Levy,MD of Scarsdale Medical Group indicating that Plaintiff "has been tested for COVID and is placed on quarantine pending results."

23.     Plaintiff was tested for COVID-19 on or about March 30, 2020.  Plaintiff received her results days later.  At the time, Plaintiff tested negative for COVID-19.

24.     Although Plaintiff initially tested negative for COVID-19, she later tested positive for it.  It is believed that Plaintiff's initial test may have produced a false negative and that Plaintiff may have had COVID-19 during the period March 31, 2020 through April 4, 2020.

**PLAINTIFF'S HUSBAND IS STRICKEN WITH COVID-19**

25.     Based on Defendant's own admission, Plaintiff's absences during the period April 21, 2020-April 25, 2020 played a role in her termination.  Plaintiff was absent from work during this period due to her husband testing positive for COVID-19.

26.     Prior to taking the day off on April 21, 2020, Plaintiff notified Defendant her husband tested positive for COVID-19.

27. On April 20, 2020, Plaintiff texted Mr. Shaw a voicemail from her husband's medical provider confirming that her husband tested positive for COVID-19.

28. Prior to taking the day off on April 21, 2020, Plaintiff obtained permission from Defendant to do so. Plaintiff's absences during the period April 21, 2020 through April 25, 2020 were authorized by Defendant.

29. After Plaintiff texted Mr. Shaw the aforementioned voicemail, she spoke to Mr. Shaw on the phone. Mr. Shaw offered Plaintiff the option of taking off from work to take care of her husband and then for her to contact him on April 26 to find out on her schedule.

30. Defendant did not direct Plaintiff to come to work despite her husband testing positive for COVID-19. Likewise, Defendant did not warn Plaintiff that taking time off from work due to her husband testing positive for COVID-19 would place her employment in danger or have any negative impact on her employment status.

31. As further evidence that Defendant authorized Plaintiff's April 21, 2020 through April 25, 2020 leave, there is a text message between Plaintiff and Mr. Shaw where after Plaintiff writes "I didn't go this week because of the situation and you gave the week otherwise I would've come to work", Mr. Shaw responds "[n]o, you didn't do anything, you're good. It's just he wants to trim the payroll since we're down so many beds. It is not anything from your end."

**PLAINTIFF MISSED SOME WORK TIME TO TAKE HER DISABLED SON TO THE HOSPITAL**

32. In Defendant's termination letter, Defendant also refers to time Plaintiff took off to take her disabled son (who had diabetes) to the hospital.

## FIRST CLAIM FOR RELIEF
*(Violation of ADA-Retaliatory Termination)*

33. Plaintiff repeats and realleges each and every allegation contained herein.

34. Defendant violated the ADA by terminating Plaintiff because she requested medical leave (ADA protected activity).

35. Defendant violated the ADA by terminating Plaintiff because she took medical leave (ADA protected activity).

36. Regardless of whether or not Plaintiff's medical condition qualified as a disability within the meaning of the ADA, Plaintiff's requesting medical leave enjoyed ADA protection because such request was made in good-faith.

37. Regardless of whether or not Plaintiff's medical condition qualified as a disability within the meaning of the ADA, Plaintiff's taking medical leave enjoyed ADA protection because it was done in good-faith.

38. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

39. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered emotional distress.

40. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

41. Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff for requesting and/or taking medical leave, Defendant and their agents knowingly violated the ADA and/or acted in reckless disregard of Plaintiff's rights under the ADA. Upon information and

belief, Defendant and the persons who played a role in Plaintiff's termination knew that it was illegal to terminate Plaintiff for requesting and/or taking medical leave.

### SECOND CLAIM FOR RELIEF
*(Violation of ADA-Discriminatory Termination Based On Plaintiff's Association With A Disabled Person and/or Person Regarded As Being Disabled and/or Person With A Record Of Being Disabled)*

42. Plaintiff repeats and realleges each and every allegation contained herein.

43. Defendant violated the ADA by terminating Plaintiff based on her association with her husband, who tested positive for COVID-19.

44. Defendant violated the ADA by terminating Plaintiff based on her association with her son, who had diabetes.

45. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

46. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

47. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

48. Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff due to her association with her husband (who tested positive for COVID-19) and/or her son (who had diabetes), Defendant and their agents knowingly violated the ADA and/or acted in reckless disregard of Plaintiff's rights under the ADA. Upon information and belief, Defendant and the persons who played a role in Plaintiff's termination knew that it was illegal to terminate Plaintiff based on her association with a disabled person.

### THIRD CLAIM FOR RELIEF
*(Violation of ADA-Discriminatory Termination Based On Plaintiff's Disability)*

49. Plaintiff repeats and realleges each and every allegation contained herein.

50. Defendant violated the ADA by terminating Plaintiff because of her disability.

51. Defendant violated the ADA by terminating Plaintiff based on her being regarded as being disabled.

52. Defendant violated the ADA by terminating Plaintiff based on her record of being disabled.

53. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

54. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

55. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

56. Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff because of her disability, Defendant and their agents knowingly violated the ADA and/or acted in reckless disregard of Plaintiff's rights under the ADA. Upon information and belief, Defendant and the persons who played a role in Plaintiff's termination knew that it was illegal to terminate Plaintiff because of her disability.

**FOURTH CLAIM FOR RELIEF**
*(Violation of the NYSHRL-Discriminatory Termination Based On Plaintiff's Association With A Disabled Person and/or Person Regarded As Being Disabled and/or Person With A Record of Being Disabled)*

57. Plaintiff repeats and realleges each and every allegation contained herein.

58. Defendant violated the NYSHRL by terminating Plaintiff based on her association with her husband, who tested positive for COVID-19.

59. Defendant violated the NYSHRL by terminating Plaintiff based on her association with her son, who had diabetes.

60. Defendant violated the NYSHRL because Plaintiff's association with her husband (who tested positive for COVID-19) and/or her association with her son (who had diabetes) played a role in Defendant's decision to terminate her.

61. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

62. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

63. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

64. Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff due to her association with her husband (who tested positive for COVID-19) and/or her son (who had diabetes), Defendant and their agents knowingly violated the NYSHRL and/or acted in reckless disregard of Plaintiff's rights under the NYSHRL. Upon information and belief, Defendant and

the persons who played a role in Plaintiff's termination knew that it was illegal to terminate Plaintiff based on her association with a disabled person.

### FIFTH CLAIM FOR RELIEF
*(Violation of NYSHRL-Discriminatory Termination Based On Plaintiff's Disability)*

65. Plaintiff repeats and realleges each and every allegation contained herein.

66. Defendant violated the NYSHRL by terminating Plaintiff based on her disability.

67. Defendant violated the NYSHRL by terminating Plaintiff because it regarded her as being disabled.

68. Defendant violated the NYSHRL by terminating Plaintiff based on her record of being disabled.

69. Defendant violated the NYSHRL because Plaintiff's disability, perceived disabled, and/or record of disability played a role in Defendant's decision to terminate Plaintiff's employment.

70. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

71. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

72. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

73. Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff because of her disability, because it regarded her as disabled, and/or because of her record of being disabled, Defendant and their agents knowingly violated the NYSHRL and/or acted in reckless disregard

of Plaintiff's rights under the NYSHRL. Upon information and belief, Defendant and the persons who played a role in Plaintiff's termination knew that it was illegal to terminate Plaintiff because of her disability, because it regarded her as disabled, and/or because of her record of being disabled.

## SIXTH CLAIM FOR RELIEF
*(Violation of NYSHRL-Failure to Accommodate)*

74. Plaintiff repeats and realleges each and every allegation contained herein.

75. Defendant violated the NYSHRL by failing to accommodate Plaintiff's disability by failing to provide her job protected medical leave.

76. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

77. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional distress.

78. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

79. Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By failing to provide Plaintiff with job protected medical leave, Defendant and their agents knowingly violated the NYSHRL and/or acted in reckless disregard of Plaintiff's rights under the NYSHRL. Upon information and belief, Defendant and the persons who played a role in Plaintiff's termination knew that Defendant was legally required to provide a disabled employee with job protected medical leave and that it was illegal not to provide such job protected medical leave.

## DEMAND FOR JURY TRIAL

80. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendant herein alleged, Plaintiff demands judgment as follows:

   i. awarding Plaintiff emotional distress damages;

   ii. awarding Plaintiff back pay and front pay, and affording all benefits that would have been afforded Plaintiff but for Defendants' unlawful actions;

   iii. awarding Plaintiff punitive damages;

   iv. awarding Plaintiff's cost of this suit;

   v. awarding reasonable attorneys' fees;

   vi. awarding pre- and post-judgment interest; and

   vii. awarding such other and further relief as the court deems just and proper.

Dated: New York, New York
       September 28, 2021

> *Respectfully submitted*,
> **THE LAW OFFICE OF**
> **JON A. STOCKMAN**
>
> By:   S/ Jon A. Stockman, Esq.
>       Jon A. Stockman, Esq. (JS6246)
>       32 Broadway, Suite 1710
>       New York, New York 10004
>       (516) 547-6418 telephone
>       jstockman@yournycattorney.com
>       Attorney for Plaintiff, Gricelda Andrade